UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AIX SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

v.                                                             CASE NO. 8:17-cv-843-T-26TBM

SOMBREROS, LLC, et al.,

    Defendants.
_____/

## **O R D E R**

**BEFORE THE COURT** is Plaintiff's Motion for Final Summary Judgment, Statement of Undisputed Facts, affidavits, depositions, and other submissions (Dkts. 91-95), Defendants Sharicka A. Adams and Joelle W. Numan's Memorandum in Opposition and their Statement of Disputed Facts (Dkts. 98 and 99), Defendants Sombreros, LLC, Ashland 2 Partners, LLC, Michael Plechy and David Scalisi's Memorandum in Opposition and their Statement of Disputed Facts (Dkts. 100 and 101), Defendants Cedric Lamarr Booth, Sr., Timeka McCullough, Quinteria Cherise Crumedy, Felicia Yvette Brown, and Cierra Latrell Jones' Memorandum in Opposition and their Statement of

Disputed Facts and other submissions (Dkt. 102-104), and Plaintiff's Reply (Dkt. 107).[1]
After careful consideration of the motion, the submissions of the parties, and the applicable law, the Court concludes the motion is due to be granted as to both the duty to defend and indemnify.

## BACKGROUND

Plaintiff, as the commercial liability insurers of Defendants Sombreros, LLC, Ashland 2 Partners, LLC, Michael Plechy, and David Scalisi (the owners), seeks a declaration that it has no duty to defend or indemnify with respect to an incident at The Hall, a nightclub in Palmetto, Florida. David Scalisi was present that night at the bar, as well as the sixteen other named individual Defendants.[2] Three of these patrons were shot with a gun, and the others were trampled in the confusion that ensued. All of the patrons have either filed actions in state court or, if not, have filed pre-suit notices.

The state-court action filed by Cedric Lamarr Booth, Sr., a shooting victim, alleges that on July 1, 2016, "an unknown patron of The Hall nightclub . . . fired gun shots inside The Hall nightclub as patrons were exiting for the night." See docket 94-2, page 2, ¶¶ 9-10. He alleges that when he attempted to leave The Hall, he was shot by the unknown

---

[1] Defendants Novell Chestnut, Earlie Cheaves, and Otis Johnson, Brittany McCullough, and Alfred Morgan, who filed answers to the complaint, have failed to respond to the motion for summary judgment. See dockets 42, 43, 44, 50 and 68.

[2] Four of the sixteen have not responded to this lawsuit: Marcellas Davis, Aubrey Harper, Candi Cotton, and Dwight Roberts. Clerk's defaults have been entered against them. See dockets 62, 73, 74 and 80.

patron.  See docket 94-2, page 2, ¶ 11.³  Booth seeks damages for personal injuries based on the negligence of the owner for undertaking various duties to provide adequate protocols and training for sufficient security and for breaching those duties by failing to warn of the dangerous condition, failing to provide proper lighting, and failing to hire, retain, and train enough security personnel to provide a safe venue for patrons.  Two other patrons were shot that night, Novell Chestnut and Otis Johnson, but they have not filed suit yet.  See docket 94-3, page 2, ¶ 7.

The state-court complaints of Sharicka Adams and Joelle Numan, Brittany McCullough, and Alfred Morgan seek damages for personal injuries suffered at The Hall in the aftermath, relying on basically the same theories of negligence as Booth.  The complaint filed by Sharicka Adams and Joelle Numan alleges that "on or about July 2, 2016, gunshots were fired inside the subject premises, The Hall, which resulted in club patrons panicking and running around inside the premises."  See docket 94-2, page 8, ¶ 5.  "[A] a result of the incident described in this Complaint, [Adams and Numan were] knocked down and trampled by other patrons, business invitees, and/or guests of The Hall."  See docket 94-2, pages 10 & 11, ¶¶ 11 & 15).  Brittany McCullough's complaint alleges that on July 2, 2016, she "was severely injured as a result of being knocked down and trampled by club patrons who panicked after gun shots were fired inside The Hall."

---

³ "When Plaintiff, Cedric Lamarr Booth Sr., attempted to leave The Hall, which premises he was properly and lawfully on, he was shot by the unknown patron of The Hall nightclub, causing Plaintiff to suffer serious injuries."

See docket 94-2, page 14, ¶ 8. Alfred Morgan's complaint simply alleges that he "was trampled and sustained numerous serious injuries" while at The Hall on July 1, 2016. See docket 94-2, page 17, ¶ 6.[4]

Plaintiff is providing the insureds a defense in the underlying actions and the pre-suit notice matters subject to a reservation of rights. See docket 25, ¶ 36. It now requests a determination of no coverage, and therefore no duty to defend or indemnify, under the operative commercial general liability based on two policy exclusions: assault and battery and firearms. The insureds and the patrons contest such a finding and argue that the terms of both exclusions are ambiguous. The insureds also contend there are disputed, material facts.

**LEGAL STANDARD**

Summary judgment is properly granted where there is no genuine dispute regarding a material fact. Fed. R. Civ. P. 56(a). The court must review the record, and all of its factual inferences, in the light most favorable to the nonmoving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is a particularly appropriate vehicle to determine insurance coverage because the interpretation of a written contract is a question of law for the court. See Technical

---

[4] Plaintiff has included in its submissions the pre-suit notices filed by Defendants Quinteria Cherise Crumedy, Felicia Yvette Brown, Cierra Latrell Jones, Timeka McCullough, Dwight Roberts, Novell Chestnut, Earlie Cheaves, Otis Johnson, Aubery Harper, Candi Cotton, and Marcellas T. Davis. See docket 94-2, pages 21-30, 33, 34 & 36.

Coating Applicators, Inc. v. U.S. Fid. & Guar., Co., 157 F.3d 843 (11th Cir. Cir. 1998); DEC Elec., Inc. v. Raphael Constr. Corp., 558 So.2d 427, 428 (Fla. 1990).

Sitting in this diversity case, the substantive law of Florida, as the forum state, applies. Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1227 (11th Cir. 2005). A declaratory judgment is an appropriate method for the court to determine coverage issues, including the duty to defend or indemnify. Higgins v. State Farm Fire & Cas. Co., 894 So.2d 5, 9 (Fla. 2004). A contract ambiguity is a question of law to be decided by the court. Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir. 1985) (citing Smith v. State Farm Mut. Auto. Ins. Co., 231 So.2d 193, 194 (Fla. 1970)).

## DUTY TO DEFEND

Under Florida law, the duty to defend is generally determined from the allegations of the complaints of the underlying cases. Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc., 2017 WL 6616690, at *6 (11th Cir. Dec. 28, 2017) (unpublished) (citing Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318 (11th Cir. 2014), and discussing Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So.2d 435 (Fla. 2005) and Higgins); Meridian Constr. & Dev., LLC v. Admiral Ins. Co., 105 F.Supp.3d 1331, 1338 (M.D. Fla. 2013) (citing Wellcare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co., 16 So.3d 904, 906 (Fla.Dist.Ct.App. 2009), but noting exceptions may exist). The complaint triggers the duty when its allegations assert facts that could bring the injury within coverage.

Attain Specialty Ins. Co. v. Miami Drywall & Stucco, Inc., 2012 WL 3043002, at *2 (S.D. Fla. Jul. 25, 2012) (citing State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004), which cites Florida law). A duty to defend the entire suit arises even if the complaint alleges facts "partially within and partially outside the scope of coverage." Auto-Owners Ins. Co. v. Elite Homes, Inc., 676 F.App'x 951, 954 (11th Cir. 2017) (unpublished) (citation omitted); Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co., 657 F.3d 1135, 1141-42 (11th Cir. 2011) (citation omitted). The duty to defend is broader than the duty to indemnify because the duty to indemnify is determined by the actual underlying facts as opposed to the allegations of the complaint. Selective Ins. Co. of the Southeast v. William P. White Racing Stables, Inc., — F.App'x—, 2017 WL 6368843, at *2 (11th Cir. 2017) (unpublished) (citation omitted); RSUI Indemn. Co. v. Desai, 2014 WL 12621215, at *3 n.3 (M.D. Fla. 2014) (citing Jones, 908 So.2d at 442-43).

Under the circumstances here, if Plaintiff is absolved of the duty to defend, there is no duty to indemnify either. See, e.g., RSUI Indemn. Co., (discussing considerations in determining whether to stay a separate count seeking to declare duty to indemnify); Tower Ins. Co. of N.Y. v. Lormejuste, 2012 WL 1986881, at *8 (N.D. Fla. 2012) (citing WellCare of Fla., Inc.).[5] None of the parties contest that both duties should be resolved at this time. Although the parties disagree that material facts are in dispute, this Court will

---

[5] See also Geovera Specialty Ins. Co. v. Hutchins, 831 F.Supp.2d 1306, 1311-12 (M.D. Fla. 2011) (citing WellCare of Fla., Inc.), aff'd, 504 F.App'x 851 (11th Cir. 2013); O'Rear v. Greenwich Ins. Co., 2010 WL 4867527 (M.D. Fla. 2010).

examine whether those disputed facts are truly material in view of the allegations of the complaint and the language of the policy.[6] The parties agree that a shooting took place on July 2, 2016, at The Hall, and patrons were either shot or injured. They do not agree whether the gun shots or trampling was the proximate, legal cause of their injuries.

## ANALYSIS

Defendants oppose the application of the two policy exclusions on the basis that both are ambiguous. They also contend that there are genuine issues of material fact including whether the discharge of the firearm or an assault or battery was the proximate cause of the injuries to the patrons and whether the injury to the patrons was caused from trampling and/or directly or indirectly from the discharge of the firearm. Defendants argue that even if the firearm or assault and battery provision applies to exclude coverage of some claims, there should be coverage for the other non-related claims alleged in their complaints. The patrons contend such non-related claims include negligence in failing to properly hire or train security, maintain the premises to avoid entry of a gun, and provide a reasonably safe environment.

### **Assault and Battery Exclusion**

The Court looks to the eight corners of the complaint and policy to assess whether Plaintiff's duty to defend was triggered in these cases. "[T]he trial court is restricted to the allegations of the complaint, regardless of what the defendant and others say actually

---

[6] The duty to defend is actually determined from the eight corners of the complaint and the policy. Addison Ins. Co., — F.App'x —, 2017 WL 6616690, at *6.

happened." Marr Inv., Inc. v. Greco, 621 So.2d 447, 449 (Fla.Dist.Ct.App. 1993)

(citation omitted). The policy's assault and battery exclusion provides:

> B. The following is added to **COMMERCIAL GENERAL LIABILITY COVERAGE PART, SECTION I – COVERAGE A**, Paragraph **2. Exclusions** and **LIQUOR LIABILITY COVERAGE PART, SECTION I – LIQUOR LIABILITY COVERAGE**, Paragraph **2. Exclusions**:
>
> This insurance does not apply to:
> **Assault, Battery Or Other Physical Alteration**
> "Bodily injury" or "property damage":
> **(1)** Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person; or
>
> **(2)** Arising in whole or in part out of any attempt by any person to avoid, prevent, suppress or halt any actual or threatened "assault" or "battery"; or
>
> **(3)** Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or attempted by any person, or any attempt by any person to avoid, prevent, suppress or halt any actual or threatened verbal or physical confrontation or altercation.
>
> This exclusion applies to all acts or omissions and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

See docket 94-3, page 28. The policy does not define the terms assault or battery, which

is not atypical. See Evanston Ins. Co. v. S & Q Prop. Inv., LLC, 2012 WL 4855537, at *2

(S.D. Fla. 2012).[7] "The mere failure to provide a definition of a term involving coverage does not render the term ambiguous." Those Certain Underwriters at Lloyd's London v. Karma Korner, LLC, 2011 WL 1150466, at *2 (M.D. Fla. 2011) (citation omitted).[8] When the policy does not define a term, the plain and generally accepted meaning should be applied. Evanston, 2012 WL 4855537, at *2 (citation omitted); Karma Korner, 2011 WL 1150466, at *2.

Under Florida law, the tort of battery "consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Evanston, 2012 WL 4855537, at *2 (citing Quilling v. Price, 894 So.2d 1061, 1063 (Fla.Dist.Ct.App. 2005)); Founders Ins. Co. v. Cortes-Garcia, 2012 WL 2505917, at *6 (M.D. Fla. 2012) (same); Geovera Specialty Ins. Co. v. Hutchins, 831 F.Supp.2d 1306, 1312 (M.D. Fla. 2011) (same), aff'd, 504 F.App'x 851 (11th Cir. 2013) (unpublished); Karma Korner, 2011 WL 1150566, at *3 (same). The criminal definition of battery in Florida is either when someone "1. Actually and intentionally touches or strikes another person against the will of the other; or 2. Intentionally causes bodily harm to another person." § 784.03(1)(a), Fla. Stat.; Evanston, 2012 WL 4855537, at *2 (citing the Florida statute); Karma Korner, 2011 WL 1150566,

---

[7] See also Those Certain Underwriters at Lloyd's London v. Karma Korner, LLC, 2011 WL 1150466, at *2 (M.D. Fla. 2011); Geovera, 831 F.Supp.2d at 1312.

[8] See also Century Surety Co. v. Five Star, Inc., 2013 WL 12085503, at * (S.D. Fla. 2013) (citing Geovera).

at *3 (same). Using a weapon merely elevates a simple battery to an aggravated battery. § 784.045(1)(a), Fla. Stat.; Evanston, 2012 WL 4855537, at *2 (citing the Florida statute); Karma Korner, 2011 WL 1150566, at *3 (same).

In Florida, criminal assault is defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." § 784.011, Fla. Stat.; Cortes-Garcia, 2012 WL 2505917, at *6 (citing Wilson v. State, 265 So.2d 411, 413 (Fla.Dist.Ct.App. 1972)); Geovera, 831 F.Supp.2d at 1312 (same and also citing Campbell v. State, 37 So.3d 948 (Fla.Dist.Ct.App. 2010)). A civil assault does not always involve a subjective intent to do harm. Geovera, 831 F.Supp.2d at 1312 (citing Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972)).

The policy does not cover bodily injury "arising in whole or in part out of" any assault or battery. The term "arising out of" under Florida law is unambiguous. Cortes-Garcia, 2012 WL 2505917, at *6 (citing Taurus Holdings, Inc. v. U.S.Fid. & Guar. Co., 913 So.2d 528 (Fla. 2005)). "Arising out of" means something broader than pure causation. Burlington Ins. Co., Inc. v. Normandy Gen. Partners, 580 F.App'x 844, 848 (11th Cir. 2014) (citing Taurus) (quotation marks omitted) (unpublished). Florida courts generally preclude coverage under the assault and battery exclusion where the negligence arose from the assault and battery. Cortes-Garcia, 2012 WL 2505917, at *6 (citation

omitted). "[T]he courts hew closely to the language of the policy exclusions and determine the exclusions extend to negligence arising out of the assault and battery." Doe v. Hudson Specialty Ins. Co., 2017 WL 979263, at *4 (S.D. Fla. 2017) (citing Essex Ins. Co. v. Big Top of Tampa, Inc., 53 So.3d 1220, 1223 (Fla.Dist.Ct.App. 2011) and other Florida cases).[9]

Cases involving the interpretation of assault or battery exclusions are abundant and not necessarily easily reconciled. Defendants rely on the case of Colony Ins. Co. v. Barnes, 410 F.Supp.2d 1137 (N.D. Fla. 2005), aff,d, 189 F.App'x 941 (11th Cir. 2006) (unpublished), and Plaintiff relies on cases such as Evanston, Karma Korner, Geovera, and Cortes-Garcia. In applying these cases, and others located by independent research, to the instant case, the allegations of the underlying complaints and policy language are key to resolving whether the duty to defend exists.

In Barnes, as in this case, the policy did not define assault and battery. The underlying complaint in Barnes did not allege an assault and battery in the wrongful death action, but referenced that the deceased, a patron of a nightclub, was hit by a "stray" bullet in the parking lot and died. The complaint did not allege that the shooter "intended to create a well-founded fear of imminent peril[,]" or that the shooter intended to hit anyone. Barnes, 189 F.App'x at 943. "[T]he shooter may have discharged the gun

---

[9] See also Arch Specialty Ins. Co. v. Maya, 2015 WL 2070449, at *3 (S.D. Fla. 2015).

intending not to make anyone apprehensive and intending not to hit anyone." Barnes, 189 F.App'x at 943.

Another case that followed Barnes and found that a duty to defend existed is Burlington Ins. Co. v. Coa-Dal Sec. Agency, Inc., 2008 WL 11333513 (S.D. Fla. 2008). The underlying complaint in Coa-Dal alleged that the plaintiff, Mr. Fernandez, was shot during an armed robbery in an apartment complex. The court found that the complaint failed to allege intent and reasoned that it was "possible that Fernandez, like the plaintiff in Barnes, was struck by a stray bullet, among other potential scenarios, and his injuries were not the result of an assault and battery." Coa-Dal, 2008 WL 11333513, at *4. The court also distinguished other cases based on the particular wording of the exclusion to include "harmful or offense contact . . . between or among two or more persons." The exclusion in Coa-Dal did not include that language, nor does the policy in this case.

Beginning with Evanston, relied on by Plaintiff, the underlying complaint alleged that the plaintiff was shot and killed in an attack by a trespassing criminal. The policy in Evanston did not define assault and battery, but the court found that the allegations fell squarely within the legal definition of battery. Evanston did not discuss the failure to allege the intent of the criminal assailant, but apparently the underlying complaint clearly alleged an attack. In the only case citing Evanston, the underlying complaints alleged that patrons of a nightclub were "assaulted and shot" and sought damages for negligence in failing to provide adequate security and failing to warn patrons regarding the numerous

criminal incidents that had previously occurred at the nightclub. Seneca Specialty Ins. Co. v. 845 North, Inc., 2015 WL 3400415, at *1 (S.D. Fla. 2015). The policy in Seneca defined assault and battery, and the court found that a shooting constituted a battery, relying on Evanston, and determined there was no duty to defend.

In Karma Korner, cited in Evanston, the policy did not define assault and battery, and the underlying complaint alleged that while an individual was retrieving a cap from the top of a vehicle, an occupant of the vehicle shot him dead. The complaint described the shooting as criminal, and the court found that no duty to defend existed because the criminal shooting was an assault and battery. In Geovera, the policy did not define assault and battery, but the court found no duty to defend existed when an individual, while showing off his gun, placed the barrel against the decedent's neck and pulled the trigger, thereby killing her. Although the complaint alleged that the individual did not know the gun was loaded, it was the intent to do the act and not the harm that mattered. The Eleventh Circuit affirmed.

Lastly, in Cortes-Garcia, the policy did not define assault and battery. The underlying complaint alleged that during an altercation in a nightclub, a patron picked up a chair and "accidentally" threw it in the direction of Cortes-Garcia, hitting him in the head which led to his death. The patron was found guilty of manslaughter. The court found that the patron intentionally picked up the chair and threw it, which fulfilled the

"objective, reasonable person standard of apprehension of harmful contact" to determine whether an assault occurred as well as satisfying the standard for battery.[10]

Because Barnes cannot be unequivocally distinguished, this Court finds that the assault and battery exclusion in the policy does not apply to deny the duty to defend. The policy does not define assault and battery, nor does it contain a clause that negates the element of intent with respect to assault and battery. See Barnes, 189 F.App'x at 943 (distinguishing Florida case on basis that assault and battery exclusion in that case precluded coverage for "harmful or offense contact between two or more persons regardless of intent" and no such language was contained in policy under review). The allegations of the underlying complaints allege that the individuals were either shot or trampled at The Hall in the aftermath of the gunfire. There are no allegations regarding whether the shooter intended to shoot someone or whether the gun was fired accidentally.

---

[10] This is not a case of a barroom or parking lot brawl where the complaint alleges an innocent bystander was accosted and struck by an assailant and the policy does not define assault and battery. See, e.g., Hermitage Ins. Co. v. Studio, Inc., 2009 WL 103664 (M.D. Fla. 2009) (finding assault and battery exclusion precluded coverage where the complaint alleged that several fights took place in the club and as a patron was leaving the club, he was approached and attacked by an individual) (citing Miami Beach Entertainment, Inc. v. First Oak Brook Corp., 682 So.2d 161, 162 (Fla.Dist.Ct.App. 1996) and Britamco Underwriter's, Inc. v. Zuma Corp., 576 So.2d 965, 965 (Fla.Dist.Ct.App. 1991)). This is also not a case where a clear assault and battery is alleged when a bouncer attacked a patron by striking him numerous times. See Founders Ins. Co. v. Motsinger, 2011 WL 3349095 (M.D. Fla. 2011) (citing Florida cases holding that intentional conduct alleged in the underlying complaint could not be regarded as "accidents" and therefore assault and battery exclusion applied to preclude coverage). Finally, this is not a case where injuries were sustained in the course of a robbery or by the type of shooting deaths that occurred in Geovera or Karma Korner. See Century Surety Co. v. JD Five Star, Inc., 2013 WL 12085503, at *3-4 (S.D. Fla. 2013).

Because the trampling was set into motion as a result of the gunshots, the occurrence of July 2, 2016, compels a duty to defend. The events as alleged when applied to the policy language do not fall within the assault and battery exclusion.

### Firearm Exclusion

The firearms exclusion is a different matter. It provides:

> It is understood that no coverage is afforded by this policy for any injury, death, claims, or actions occasioned directly or indirectly or as an incident to the discharge of firearms by person or persons on or about the insured premises.

See docket 94-3, page 34. Another court has already interpreted this precise clause. In Lormejuste, the underlying complaint alleged that criminals shot and killed Roy Germinal in the middle of a flea market. The court construed the exact firearms provision as unambiguous and relied on Taurus. Lormejuste, 2012 WL 1986881, at *7. In Taurus, the Florida Supreme Court held that the term "arising out of" included "incident to" and encompassed a far broader meaning than "caused by." Applying the dictionary meaning of "occasioned by" to mean "bring about" or cause, the court found that Mr. Germinal's death was caused by the gunshot and the wrongful death action was the direct result of the death.

Based on Lormejuste and the plain, unambiguous language of the firearm policy, the occurrence at The Hall lands squarely within the exclusion. There is no question that injuries were caused both directly by gunshots and indirectly by the trampling in the melee that followed the shots. That the claim is one for negligence does not change the

outcome.  See, e.g., Seneca (finding no duty to defend negligence claim arising from assault and shooting of nightclub patron under either the assault and battery exclusion or the weapons exclusion).  The firearm exclusion precludes coverage.[11]

It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Motion for Final Summary Judgment (Dkt. 94) is granted.  The Clerk is directed to enter judgment in favor of Plaintiff, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** at Tampa, Florida, on April 5, 2018.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[11] Although Alfred Morgan's complaint does not refer to a gun being fired, he admits paragraph 29 of the amended complaint at docket 25 that there was "a shooting incident" at The Hall that night during which he was injured.  See docket 50.